**Estanislao S. MAPOY,**
**Plaintiff–Appellee,**

v.

**William CARROLL, District Director, United States Department of Justice, Immigration and Naturalization Service, Defendant–Appellant.**

No. 98–1131.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 1, 1998.

Decided July 13, 1999.

James Arthur Hunolt (argued), Frank W. Hunger (briefed), Assistant Attorney General, David M. McConnell (briefed), Assistant Director, Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, DC, for Appellant.

Arnedo Silvano Valera (argued), Mark S. Loria (briefed), Valera & Associates, Falls Church, Virginia, for Appellee.

Before WILLIAMS and MICHAEL, Circuit Judges, and MICHAEL, Senior United States District Judge for the Western District of Virginia, sitting by designation.

Vacated and remanded by published opinion. Judge WILLIAMS wrote the opinion, in which Judge MICHAEL and Senior Judge MICHAEL joined.

WILLIAMS, Circuit Judge:

This case is on appeal from the district court's grant of a preliminary injunction staying Estanislao Mapoy's deportation and its accompanying order of Mapoy's release from INS custody. We do not reach the merits of the district court's decision because we conclude that § 242(g) of the Immigration and Nationality Act (INA), as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), divested the district court of subject matter jurisdiction to hear this case. Accordingly, we vacate the judgment of the district court and remand this case with the instruction to dismiss for want of subject matter jurisdiction.

## I.

Estanislao Mapoy is a native and citizen of the Phillippines who entered the United States on September 3, 1985, on a B–2 tourist visa and has remained in this country illegally for over thirteen years. After attaining seven years of continuous physical presence in the United States, Mapoy became eligible to apply for suspension of deportation pursuant to § 244(a)(1) of the

INA, codified at 8 U.S.C.A. § 1254(a)(1). On June 12, 1993, Mapoy requested the issuance of an Order to Show Cause (OSC) why he should not be deported from the United States, so that he might apply for suspension of deportation. On October 26, 1993, the INS served on Mapoy an OSC charging him as deportable under § 241(a)(1)(B) of the INA, codified at 8 U.S.C.A. § 1251(a)(1)(B) (redesignated by IIRIRA § 305(a)(2) as INA § 237(a)(1)(B), to be codified at 8 U.S.C.A. § 1227(a)(1)(B)), for having remained illegally in the United States. Mapoy then applied for a suspension of deportation pursuant to INA § 244(a)(1) on the basis of extreme hardship. At a hearing before an immigration judge (IJ) on February 1, 1994, Mapoy conceded deportability and designated the Phillippines as the country of deportation. On March 6, 1995, the IJ denied Mapoy's application and gave Mapoy until June 6, 1995, to depart voluntarily or be subject to an order of deportation. Mapoy appealed this decision to the Board of Immigration Appeals (BIA),which denied the appeal on March 8, 1996, and extended Mapoy's voluntary departure date to thirty days after its decision (the Voluntary Departure Order).

On August 15, 1996, Mapoy filed a petition for review of the Voluntary Departure Order with the United States Court of Appeals for the Ninth Circuit. The Ninth Circuit denied the petition on May 20, 1997. Mapoy then filed a petition for rehearing with the Ninth Circuit, which refused to rehear the case on July 25, 1997. The Ninth Circuit issued a final order memorializing its decision on August 5, 1997. The BIA then reset Mapoy's date for voluntary departure to thirty days after the issuance of the Ninth's Circuit's order. When Mapoy failed voluntarily to depart the United States within thirty days of the Ninth Circuit's decision, the alternate order of deportation issued in 1995 by the IJ became immediately effective. A warrant of deportation was issued and Mapoy was ordered to report for deportation on or around November 14, 1997.[1]

After the initial proceedings were completed, Mapoy launched a second attack against his impending deportation. On October 16, 1997, Mapoy filed a Motion to Reopen his deportation proceedings and for a Stay of Deportation with the BIA. In his Motion, Mapoy sought cancellation of removal pursuant to INA § 240A, and adjustment of status.[2] Mapoy based his Motion to Reopen on new circumstances that were not present at his 1993 application for suspension of deportation, including his marriage to a legal permanent resident, who was expecting their first child and would be qualified to become a U.S. citizen in September 1998, and an approved I–130 relative visa petition his spouse had filed on his behalf.[3] Mapoy's child was born on October 30, 1997, and is a U.S. citizen.

Pursuant to the warrant of deportation, Mapoy voluntarily surrendered to INS custody on November 10, 1997. On the same day, the BIA denied Mapoy's Motion for a Stay of Deportation, concluding that his Motion to Reopen was untimely and

---

**1.** We are unable to determine from the record exactly when Mapoy was ordered to report for deportation and when he was scheduled to be deported. *Compare* Mot. to Reopen (Mapoy deportation scheduled for November 10) *with* Nov. 14, 1997 TRO Hr'g Tr. at 3 (Mapoy deportation scheduled for November 14) *with* Oct. 30, 1998 BIA Order (Mapoy ordered to report for deportation on November 17).

**2.** In its Opposition to Respondent's Motion to Reopen and to Stay Deportation, the INS argued that as a matter of law Mapoy was not eligible for cancellation of removal because the provisions of INA § 240A apply only to aliens in removal proceedings, not to aliens in deportation proceedings. In a Supplemental Motion to Reopen filed November 10,1997, Mapoy requested the relief of suspension of deportation.

**3.** In a Supplemental Motion to Reopen filed November 12, 1997, Mapoy alleged ineffective assistance of counsel as an additional ground for his Motion to Reopen.

not likely to be granted. The INS District Director also denied Mapoy's request for a stay of deportation.

While his deportation was pending, Mapoy began the proceedings that are the subject of this appeal: he filed a Complaint for Declaratory and Injunctive Relief and Petition for a Writ of Habeas Corpus in the United States District Court for the Eastern District of Virginia on November 14, 1997, seeking a stay of deportation and release from detention. Also on November 14, 1997, Mapoy filed a Notice and Motion for Preliminary Injunctive Relief and a Restraining Order to Stay Deportation. At a brief hearing on November 14, 1997, the INS agreed that it would not deport Mapoy until the district court considered his complaint and habeas petition. On November 18, 1997, the INS filed an Opposition to the Motion for Injunctive Relief and Petition for Writ of Habeas Corpus, contending that § 242(g) of the INA, as amended by IIRIRA, Pub. L. No. 104–208, Div. C, 110 Stat. 3009–546, divested the district court of jurisdiction over the INS's decision to execute Mapoy's removal order. In the alternative, the INS argued that an injunction should not issue because Mapoy failed to show a substantial likelihood of success on the merits of his Motion to Reopen.

The parties presented oral argument to the district court on Mapoy's complaint and habeas petition on November 19, 1997. Mapoy argued that the district court possessed jurisdiction over this case under IIRIRA, that his Motion to Reopen was timely filed, that the equities favored a stay of deportation, and that he should be released from INS custody because he was not a flight risk. The INS argued that motions to reopen are highly disfavored, that the regulations do not provide an alien with the opportunity to reopen his case continuously whenever new facts arise, that Mapoy is barred from receiving the relief he seeks because he stayed past his voluntary departure date, and that Mapoy was a flight risk. In a Memorandum Opinion and Order dated November 26, 1997, the district court found that it had jurisdiction, found that the Motion to Reopen was timely filed, enjoined the Immigration and Naturalization Service (INS) from deporting Mapoy until the BIA had considered the merits of his Motion to Reopen, and directed the INS to release Mapoy on bond from custody pending resolution of his motion. On December 1, 1997, the district court remanded the case to the BIA for reconsideration of Mapoy's motion.[4] The INS filed a notice of appeal on January 23, 1998.

## II.

 We first must consider whether the district court correctly asserted subject matter jurisdiction over Mapoy's complaint and habeas petition. The district court's assertion of jurisdiction is a legal determination that this Court reviews de novo. *See Yarnevic v. Brink's, Inc.*, 102 F.3d 753, 754 (4th Cir.1996); *Ahmed v. United States*, 30 F.3d 514, 516 (4th Cir. 1994). Although Congress possesses plenary power to restrict the jurisdiction of the federal courts over immigration decisions, *see Carlson v. Landon*, 342 U.S. 524, 537, 72 S.Ct. 525, 96 L.Ed. 547 (1952), aliens held in custody of federal immigration officials have traditionally been able to obtain review of all administrative decisions by petitioning for a writ of habeas corpus, *see Heikkila v. Barber*, 345 U.S. 229, 234–35, 73 S.Ct. 603, 97 L.Ed. 972 (1953) (upholding Congress's authority to preclude judicial intervention in deportation cases, but recognizing that aliens could attack deportation orders by habeas corpus).

---

4. After the district court decision and just prior to oral argument in this appeal, the BIA granted Mapoy's Motion to Reopen and remanded the case to the IJ for further proceedings. The BIA based its decision on the district court order mandating the BIA's consideration of Mapoy's new circumstances. The district court order is vacated for the reasons discussed herein.

Enacted on September 30, 1996, IIRIRA altered the way in which aliens could obtain judicial review of deportation orders. Section 306 of IIRIRA repealed the entire judicial review scheme in INA § 106, codified at 8 U.S.C. § 1105a, and replaced it with a new judicial review scheme in INA § 242, codified at 8 U.S.C. § 1252. *See* IIRIRA § 306. Significantly, this new judicial review scheme limits judicial review of particular claims to the provisions for review contained in § 242. New INA § 242(g) provides that:

> Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C.A. § 1252(g) (West 1999). Section 1252(g) went into effect on April 1, 1997, *see INS v. Yang*, 519 U.S. 26, 117 S.Ct. 350, 352 n. 1, 136 L.Ed.2d 288 (1996), while Mapoy's petition for review of the Voluntary Departure Order was pending in the Ninth Circuit. Congress expressly provided that § 1252(g) applies "without limitation to claims arising from all past, pending, or future exclusion, deportation, or removal proceedings." IIRIRA § 306(c)(1).

The Supreme Court recently clarified the scope of § 1252(g) in *Reno v. American–Arab Anti–Discrimination Comm.,* 525 U.S. 471, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999). In *American–Arab,* the Court addressed the apparent tension between IIRIRA § 306(c)(1), described above, and IIRIRA § 309(c)(1), which sets forth the general rule that the judicial-review procedures of § 1252 do not apply to aliens who were already in exclusion or deportation proceedings on IIRIRA's effective date. *See id.* at 940–41. In resolving this tension, the Supreme Court rejected "the unexamined assumption that § 1252(g) covers the universe of deportation claims" and held that § 1252(g) applied "only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Id.* at 943 The Court reasoned that these three actions are stages of the deportation process at which the Executive has discretion to go forward or to abandon the endeavor and that § 1252(g) was designed to prevent judicial intervention into these actions outside the streamlined process Congress had designed. *See id.* at 943–44. The Supreme Court concluded that "[i]n cases to which § 1252(g) applies, the rest of § 1252 is incorporated through the '[e]xcept as provided in this section' clause." *Id.* at 945 (second alteration in original).

■ Mapoy's refusal to depart voluntarily resulted in an automatic order of deportation being entered against him, which the INS sought to enforce. Once Mapoy was detained pending deportation, he filed the instant claim for injunctive relief and a writ of habeas corpus. The basis for Mapoy's claim was the BIA's order denying his Motion for Stay of Deportation and its continued detention of Mapoy. His underlying motion for a stay clearly related to the BIA's execution of a removal order. Thus, Mapoy's complaint and habeas petition clearly arose from the INS's decision to execute a removal order and is subject to § 1252(g).[5]

Applying § 1252(g) to Mapoy's case, the district court concluded that it was not divested of general habeas jurisdiction pursuant to § 2241.[6] Following *Mojica &*

---

**5.** "[A]ny reference in law to an order of removal shall be deemed to include a reference to an order of exclusion and deportation or an order of deportation." IIRIRA § 309(d)(2).

**6.** The district court's decision preceded the Supreme Court's decision in *Reno v. American–Arab Anti–Discrimination Comm.,* 525 U.S. 471, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999). The district court's reasoning is relevant, however, because we have concluded that § 1252(g), as interpreted by the Supreme

*Navas v. Reno,* 970 F.Supp. 130 (E.D.N.Y. 1997), the district court first noted that "repeals by implication are not favored." (J.A. at 24 (internal quotation marks omitted)). The district court then cited *Felker v. Turpin,* 518 U.S. 651, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996), for the proposition that a statutory amendment of federal court jurisdiction does not foreclose § 2241 habeas review if it does not specifically address such review. Finally, the district court concluded that because § 1252(g) did not explicitly foreclose § 2241 review, the court retained statutory habeas jurisdiction.

We begin our de novo review of the district court's assertion of jurisdiction with the plain language of § 1252(g). *See Robinson v. Shell Oil Co.,* 519 U.S. 337, 117 S.Ct. 843, 846, 136 L.Ed.2d 808 (1997). "If the 'statutory language is unambiguous and the statutory scheme is coherent and consistent,' our inquiry ends." *Alexander S. v. Boyd,* 113 F.3d 1373, 1383 (4th Cir. 1997) (quoting *Robinson,* 117 S.Ct. at 846), *cert. denied,* 118 S.Ct. 880 (1998). " 'The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which the language is used, and the broader context of the statute as a whole.' " *Id.* (quoting *Robinson,* 117 S.Ct. at 846). "In interpreting statutory language, words are generally given their common and ordinary meaning." *Id.*

■ Our preliminary inquiry involves the language and context of the clause "[e]xcept as otherwise provided in this section and notwithstanding any other provision of law." The word " 'any' is a term of great breadth." *United States v. Wildes,* 120 F.3d 468, 470 (4th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 885, 139 L.Ed.2d 873 (1998); *see also Black's Law Dictionary* 94 (6th ed.1990) (defining "any" to mean "[s]ome; one out of many; an indefinite number," that depending on the context and subject matter of the statute, "may be employed to indicate 'all' or 'every' "). " 'Read naturally,' the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.' " *Wildes,* 120 F.3d at 470 (quoting *United States v. Gonzales,* 520 U.S. 1, 117 S.Ct. 1032, 1035, 137 L.Ed.2d 132 (1997) (quoting *Webster's Third New Int'l Dictionary* 97(1976))). Because "[e]xcept as otherwise provided in this section," connotes a singular exception to the general rule in § 1252(g) that jurisdiction is stripped from the enumerated claims, we interpret "any" to mean "all," and, thus, "notwithstanding any other provision of law" to mean that all other jurisdiction-granting statutes, including § 2241, shall be of no effect. *Cf. United States v. Fernandez (Appeal of U.S. by Att'y Gen.),* 887 F.2d 465, 468 (4th Cir.1989) (interpreting "notwithstanding any other provision of law" language in Ethics in Government Act to "naturally mean[ ] that the conferral of prosecutorial powers [on the independent counsel] should not be limited by other statutes").

Contrary to the district court's belief, *Felker* provides no support for the conclusion that § 1252(g) impermissibly repeals § 2241 by implication. In *Felker,* the Supreme Court addressed the issue of whether its original habeas jurisdiction under § 2241 was repealed by § 106(b)(3)(E) of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104–132, 110 Stat. 1214, 1221, which provides that "[t]he grant or denial of an authorization by a court of appeals to file a second or successive application [for habeas relief] shall not be appealable and shall not be the subject of a petition for rehearing or for a writ of certiorari." 28 U.S.C.A. § 2244(b)(3)(E)(West Supp. 1999). In interpreting this provision, the Supreme Court reasoned:

> Although § 106(b)(3)(E) precludes us from reviewing, by appeal or petition for certiorari, a judgment on an application for leave to file a second habeas petition in district court, it makes no mention of

Court in *American-Arab,* applies to Mapoy's case.

our authority to hear habeas petitions filed as original matters in this Court. *Felker*, 116 S.Ct. at 2338–39. The Supreme Court concluded that to find that § 106(b)(3)(E) repealed original habeas jurisdiction under § 2241 would effect an impermissible repeal by implication. *See id.* at 2339.

In *Felker*, the Supreme Court held that a statute that by its plain terms only removed two types of Supreme Court jurisdiction over second or successive habeas petitions—appellate and certiorari jurisdiction—did not implicitly remove a third—original habeas jurisdiction under § 2241. *See id.* at 2338–39. Unlike the statute at issue in *Felker*, § 1252(g) does not repeal specifically enumerated grounds of jurisdiction to the exclusion of others not listed, but strips *all* federal jurisdiction from claims arising from the three enumerated actions of the Attorney General with the sweeping clause "[e]xcept as provided in this section and notwithstanding any other provision of law." Because this clause, as we concluded above, clearly encompasses habeas jurisdiction under § 2241, it is sufficient to satisfy *Felker*.

■ In sum, Congress could hardly have been more clear and unequivocal that courts shall not have subject matter jurisdiction over claims arising from the actions of the Attorney General enumerated in § 1252(g) other than jurisdiction that is specifically provided by § 1252. The district court, therefore, could not assert jurisdiction over Mapoy's claim challenging

the BIA's execution of an order of deportation entered against him unless such jurisdiction is conferred by § 1252. *See American–Arab*, 119 S.Ct. at 945. Section 1252 provides that an alien who wishes to challenge a final order of removal must file a petition for review of such an order in the court of appeals. *See* 8 U.S.C.A. § 1252(b)(2). Mapoy did not, and could not, avail himself of this review, because the BIA's order denying his Motion for Stay of Deportation pending his not-yet-acted-upon Motion to Reopen was not a "final order of removal" for purposes of judicial review under § 1252. *See, e.g., Akrap v. INS*, 966 F.2d 267, 270 (7th Cir. 1992) (holding that BIA's order denying a motion for stay of deportation was not a "final order of deportation" for purposes of judicial-review provisions of 8 U.S.C. § 1105a(a)); *Vlassis v. INS*, 963 F.2d 547, 549 (2d Cir.1992) (same); *Reid v. INS*, 766 F.2d 113, 115–16 (3d Cir.1985) (same). Because Mapoy's claim is a thinly veiled attempt to evade the dictates of § 1252, we hold that the district court lacked jurisdiction to hear his complaint and habeas petition.[7]

### III.

In sum, we conclude that the district court erred in holding that it had jurisdiction over Mapoy's complaint and habeas petition. Because our jurisdictional conclusion is dispositive of this case, we do not review the merits of the district court's

---

7. Because Mapoy is a non–criminal alien who received judicial review of his challenge to the final order of deportation entered against him, we do not address the issue that has split the circuits—whether IIRIRA's stripping of all jurisdiction, including habeas jurisdiction under § 2241, over a claim by a criminal alien violates the Suspension Clause. *Compare Richardson v. Reno*, 162 F.3d 1338, 1357 (11th Cir.1998) (holding that § 1252(g) precludes § 2241 habeas jurisdiction over all immigration decisions), *vacated for further consideration*, 119 S.Ct. 2016(1999) *and Yang v. INS*, 109 F.3d 1185, 1195 (7th Cir.) (stating in dicta that "[§ 1252(g) ] abolishes even review

under § 2241, leaving only the constitutional writ, unaided by statute"), *cert. denied*, —— U.S. ——, 118 S.Ct. 624, 139 L.Ed.2d 605 (1997), *with Sandoval v. Reno*, 166 F.3d 225, 236–38 (3d Cir.1999) (holding that § 1252(g) does not eliminate § 2241 habeas jurisdiction in part to avoid "serious constitutional problems" that would arise if § 1252(g) was interpreted to remove all review of executive detention), *Goncalves v. Reno*, 144 F.3d 110, 121–23 (1st Cir.1998) (same), *cert. denied*, —— U.S. ——, 119 S.Ct. 1140, 143 L.Ed.2d 208 (1999), *and Jean–Baptiste v. Reno*, 144 F.3d 212, 219–20 (2d Cir.1998) (same).

decision.[8] We therefore vacate the district court's decision and remand with the instruction to dismiss Mapoy's complaint and habeas petition for want of subject matter jurisdiction.

*VACATED AND REMANDED.*

---

8. We note that the INS had a credible basis to argue that the Voluntary Departure Order constituted the final administrative order for purposes of determining the timeliness of Mapoy's Motion to Reopen, *see* 8 C.F.R. § 241.31 (1998), but due to our disposition on jurisdictional grounds, we do not address whether the district court erred in finding that Mapoy's Motion to Reopen was timely.