**Habib HATAMI, Plaintiff,**

v.

**Tom RIDGE, Defendant.**

**No. CIV.A. 03–777–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

July 11, 2003.

Kelly Marie Baldrate, Victor M. Glasberg & Associates, Alexandria, VA, for Plaintiff.

S. Kathleen Pepper, Office of the U.S. Attorney, Alexandria, VA, for Defendant.

### MEMORANDUM OPINION

ELLIS, District Judge.

Plaintiff, a lawful permanent resident alien, faces imminent removal from this country following his state conviction and twelve month sentence for a domestic assault and battery. He seeks here a temporary stay of the removal order to allow him the opportunity to pursue his state *habeas corpus* petition attacking the predicate state conviction on the ground of ineffective assistance of counsel. The threshold jurisdictional question is whether 8 U.S.C. § 1252(g) bars such a stay.

### I.

Plaintiff Habib Hatami is a twenty-four year old permanent resident alien who has resided in Virginia for the past fourteen years. Born in Afghanistan, plaintiff immigrated to the United States when he was ten years old. Currently, his entire immediate family lives in the Northern Virginia area, including his mother and seven siblings, six of whom are United States citizens and one of whom is a lawful permanent resident alien. Since leaving Afghanistan in 1985, plaintiff has never returned, nor has he maintained relations with anyone in that country. He attended high school in Fairfax, studied at the

Northern Virginia Community College, and has held a variety of jobs in the Northern Virginia area, including cashier, sales agent, and front desk clerk at local hotels.

On August 13, 2001, Hatami was charged with assault and battery against his wife, as well as violating an emergency protective order of the Arlington County Juvenile and Domestic Relations Court barring him from having contact with her.[1] On October 11, 2001, while represented by counsel, Hatami pled guilty to these charges.[2] It does not appear that his counsel negotiated a plea agreement on his behalf. Thereafter, on November 8, 2001, Hatami was sentenced to twelve months in jail, with six months suspended for two years. On the same day, consistent with Virginia law, Hatami noticed an appeal of his conviction to the Arlington County Cir-cuit Court,[3] and a hearing in that court was scheduled for November 21, 2001. On November 16, 2001, however, Hatami withdrew this appeal.[4]

Soon thereafter, the government commenced removal proceedings against Hatami based on 8 U.S.C. § 1227(a)(2)(A)(i)(II), which provides for removal of an alien who is convicted of a crime for which a sentence of one year or longer may be imposed.[5] Hatami then applied for "withholding of removal" under both the Immigration and Nationality Act[6] and the Convention Against Torture and Other Cruel, Inhuman, Degrading Treatment and Punishment.[7] On August 12, 2002, an immigration judge denied this application and Hatami promptly appealed to the Board of Immigration Appeals ("BIA"). On January 23, 2003, the BIA dismissed his appeal. According to Hata-

---

1. It appears the underlying facts are as follows: At the time of the offense, Hatami and his wife were separated and she was living with a friend. On August 12, 2001, Hatami confronted his wife in the hallway of her apartment building. When she attempted to flee, he caught her, threw her to the floor, and struck her in the face; he then grabbed her by her hair, and dragged her towards the elevator. At that point, her neighbors came to her aid. Shortly thereafter, Hatami was arrested and the Arlington County Juvenile and Domestic Court issued an emergency protective order. In violation of this order, Hatami continued to call his wife, and accordingly, on August 13, 2001, he was arrested for his violation of the emergency protective order.

2. Although not material to the issues at bar, it is worth noting that the record reflects that the assault and battery charge was not Hatami's first brush with the law. On December 4, 1997, he was found guilty of credit card fraud in Fairfax County, Virginia. On April 24, 2000, he was found guilty of fraudulent use of a birth certificate and drivers license, also in Fairfax County. On three separate occasions, in January 21, 1999, June 16, 1999, and August 1, 2000, he was found guilty of petit larceny, again all in Fairfax County.

3. Va.Code § 16.1–132 (providing that "any person convicted in a district court of an offense not felonious shall have the right, at any time within ten days from such conviction, and whether or not such conviction was upon a plea of guilty, to appeal to the circuit court").

4. Va.Code § 16.1–133 (providing that an appeal of a conviction in district court may be withdrawn before the appeal is heard).

5. 8 U.S.C. § 1227(a)(2)(A)(i)(II) provides that "Any alien who is convicted of a crime for which a sentence of one year or longer may be imposed is deportable."

6. 8 U.S.C. § 1101 *et seq.*

7. The Foreign Affairs Reform and Restructuring Act of 1998, § 2242, Pub.L. No. 105–277, Div. G, 112 Stat. 2681, 2681–761 (Oct. 21, 1998), implemented Article 3 of the Convention Against Torture in the United States. *See Khourassany v. INS.*, 208 F.3d 1096, 1099 (9th Cir.2000). Article 3 provides that a signatory nation will not "expel, return ... or extradite" a person to another country "where there are substantial grounds for believing that he would be in danger of being subjected to torture." *Id.*

mi, Department of Homeland Security ("DHS") personnel then advised his counsel that the United States had not deported aliens to Afghanistan for several years and did not expect to do so in this case. On the basis of this information, Hatami decided not to file a petition for review of the BIA's denial of his appeal with the Court of Appeals for the Fourth Circuit. Later, Hatami discovered that this information was inaccurate; he learned that this country does in fact deport Afghan aliens to their native country. Moreover, the DHS has now advised Hatami that as soon as his passport and travel documents can be obtained from the Embassy of Afghanistan, he will be removed to that country.[8]

On June 3, 2003, Hatami, acting through new counsel, filed a *habeas corpus* petition in the Circuit Court of Arlington County, alleging ineffective assistance of counsel in connection with the domestic assault and battery conviction. Specifically, Hatami contends his counsel was ineffective by reason of (i) his failure to advise Hatami of the immigration consequences of pleading guilty to a crime carrying a twelve month sentence, and (ii) his failure to negotiate or otherwise obtain a "feasible substitute sentence" of one day less than a year.

On June 13, 2003, Hatami filed this complaint requesting a preliminary injunction, staying the removal order until his state *habeas corpus* petition is adjudicated. His complaint presents the following three questions: (1) whether there is jurisdiction to grant the requested stay; (2) what standard properly governs the disposition of the plaintiff's request for a stay of removal; and (3) whether a stay is warranted given Hatami's prospects for success in the state *habeas* proceeding. For the reasons that follow, the threshold jurisdictional question is dispositive, and it is accordingly unnecessary to address and resolve the other two questions.

## II.

▮▮▮ In the exercise of its constitutional power to limit federal court jurisdiction,[9] Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act, of 1996 (IIRIRA), repealing the then-existing scheme for judicial review of final orders of deportation, and replacing it with a significantly more restrictive scheme. *See* 8 U.S.C. § 1252, *et seq.; Reno v. American–Arab Anti–Discrimination Committee*, 525 U.S. 471, 474, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999) (*AADC*). This

---

**8.** Counsel for the government has represented that the Attorney General will not seek to remove Hatami prior to the issuance of a ruling on the instant motion. Also, in the course of oral argument on July 7, 2003, Hatami's counsel reported that Hatami's mother had suffered a potentially life-threatening stroke. This information is more appropriately addressed to the Attorney General, who has discretion to postpone or cancel Hatami's removal to Afghanistan.

**9.** The scope of Congress' power to withdraw jurisdiction from federal courts is the subject of scholarly debate; but one important limitation on this power is the Suspension Clause, which states that "the privilege of the Writ of Habeas Corpus shall not be suspended, unless

when in cases of Rebellion or Invasion the public Safety may require it." U.S. Const. art I, § 9, cl. 2; *see, e.g., INS v. St. Cyr*, 533 U.S. 289, 304–05, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) (holding that Congress, through its enactment of the IIRIRA and the Antiterrorism and Effective Death Penalty Act (AEDPA), had not repealed federal courts' *habeas* jurisdiction under § 2241 because to do so would raise "serious and difficult constitutional" issues). *See generally*, David Cole, *Jurisdiction and Liberty: Habeas Corpus and Due Process as Limits on Congress's Control of Federal Jurisdiction*, 86 Geo. L.J. 2481 (1998) (arguing that the Suspension Clause plays a "critical role" in limiting Congress' power to restrict judicial review of immigration decisions).

limitation of jurisdiction is quite specific and circumscribed; it bars judicial review of "three discrete actions:" the Attorney General's decisions (1) to "*commence* proceedings," (2) to "*adjudicate* cases," or (3) to "*execute* removal orders." *AADC*, 525 U.S. at 481, 119 S.Ct. 936 (citing 8 U.S.C. § 1252(g)).[10] According to the Supreme Court, Congress was acutely aware that these discretionary decisions of the Attorney General had spawned substantial litigation that impeded the removal process, and the lawmakers therefore elected to withdraw federal jurisdiction over such decisions as a means of streamlining the removal process and according a measure of protection for these discretionary decisions. *Id.*, 525 U.S. at 483–5, 119 S.Ct. 936 citing 6 C. Gordon, S. Mailman, & S. Yale–Loehr, *Immigration Law and Procedure* § 72.03[2][a].

In the circumstances at bar, 8 U.S.C. § 1252(g) is dispositive; this complaint, because it seeks only a stay of a removal order, falls squarely within the terms of this section. Accordingly, § 1252(g) operates in this context to preclude consideration of plaintiff's request for a temporary stay barring his removal to Afghanistan.

Ample authority confirms this result. In *Mapoy v. Carroll*, 185 F.3d 224 (4th Cir.1999), the Fourth Circuit on essentially similar facts reached precisely the same result. There, an alien subject to a removal order, filed a district court complaint for declaratory and injunctive relief, as well as a *habeas corpus* petition seeking relief from detention.[11] In vacating a district court's grant of a stay, the Fourth Circuit held that because the basis of the alien's claim was "the execution of a removal order," his request for a stay of removal "clearly arose from the INS's decision to execute a removal order and is subject to § 1252(g)." *Mapoy*, 185 F.3d at 228;[12] *see also Janvier v. INS*, 174 F.Supp.2d 430, 433 (E.D.Va.2001) (holding that § 1252(g) applied to a request for an injunction barring a removal order and accordingly there was no federal jurisdiction to review the removal order).

■ Seeking to avoid the result reached here, Hatami correctly notes that *habeas* relief is not barred by § 1252(g),[13] and argues further that the failure to grant his request for a stay would render his right

10. Section 1252(g) states:

Exclusive Jurisdiction
Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter. 8 U.S.C. § 1252(g).

11. In *Mapoy*, the alien had agreed to a voluntary departure, but failed to comply with that order, thereby triggering an automatic deportation order. Thereafter, the alien filed a motion to reopen his deportation proceedings and a stay of deportation with the BIA; both of these motions were denied. While these motions were pending before the BIA, the alien filed his complaint for a stay or removal and a petition for *habeas corpus* in federal district court. *See Mapoy*, 185 F.3d at 227.

12. The *Mapoy* opinion, citing a circuit split, explicitly chose not to address the question whether IIRIRA stripped federal courts of *habeas* jurisdiction under § 2241. *Mapoy*, 185 F.3d at 230 n.7. *St. Cyr* settled this question by holding that three provisions of IIRIRA, 8 U.S.C. §§ 1252(a)(1), 1252(a)(c)(C), and 1252(b)(9), does not strip federal courts of this jurisdiction. *See St. Cyr*, 533 U.S. at 310–11, 121 S.Ct. 2271. Thus, had *Mapoy* arisen after *St. Cyr*, the Fourth Circuit presumably would have vacated the district court ruling insofar as the alien was seeking a stay but that the district court could consider the alien's *habeas* petition seeking release from detention.

13. *See supra* note 9.

of *habeas corpus* ineffective, thereby violating the Constitution's Suspension Clause. This argument is fatally flawed in at least two respects. First, Hatami's complaint here is not one for *habeas* relief under § 2241, but is instead a request for a stay of the removal order; thus, it is § 1252(g) that is implicated, *not* the Suspension Clause. Second, Hatami is mistaken in his claim that dismissal of his complaint in this case effectively denies his request for *habeas corpus* relief; he may, if he chooses, continue to pursue his pending state *habeas corpus* claim even after his removal to Afghanistan. His presence in Virginia is not required for this purpose. To be sure, there may be practical difficulties in doing so, but these are not insurmountable. If he should ultimately prevail, he may seek re-entry to this country or take other appropriate steps to "unravel his untoward immigration status." *See Smith v. Ashcroft,* 295 F.3d 425, 428 (4th Cir.2002) (holding that an alien removed to Trinidad, but who filed a *habeas* petition prior to his removal from the United States, could continue to pursue his petition from overseas).[14]

Given the result reached here, it is unnecessary to address or decide the other questions presented by this case, namely (1) the proper standard governing the grant or denial a stay of removal[15] and (2) Hatami's prospects for success in his state *habeas* petition, a factor pertinent to the stay analysis.[16] The plaintiff's request for

---

**14.** It is also open to the Attorney General to exercise his discretion to delay execution of Hatami's removal in recognition of the difficulties Hatami might face in prosecuting the *habeas corpus* claim from overseas, or because the claim might have merit, or simply on compassionate grounds.

**15.** The circuits are split on this question. The Second, Sixth, and Ninth Circuits have held that 8 U.S.C. § 1252(f)(2), which sets forth a clear and convincing evidence requirement, applies only to a court's issuance of a permanent injunction, and not to a court's consideration of a temporary stay pending appeal. *See Mohammed v. Reno,* 309 F.3d 95, 98–100 (2d Cir.2002); *Maharaj v. Ashcroft,* 295 F.3d 963, 965–966 (9th Cir.2002); *Andreiu v. Ashcroft,* 253 F.3d 477, 484 (9th Cir.2001) (en banc); *Bejjani v. INS,* 271 F.3d 670, 687–88 (6th Cir.2001). The Eleventh Circuit, by contrast, adheres to the view that the heightened standard articulated in § 1252(f)(2) applies to granting temporary stays. *See Weng v. U.S. Attorney General,* 287 F.3d 1335, 1337–40 (11th Cir.2002)..

**16.** Hatami's prospects for success on the ineffective assistance of counsel issue are problematic given the Fourth Circuit's pronouncement that "the Constitution does not require defense counsel to inform an accused person of the collateral consequences of his guilty plea, and therefore,...ineffective assistance does not occur where counsel fails to tell the defendant that his plea may or will result in deportation." *See United States v. DeFreitas,* 865 F.2d 80, 82 (4th Cir.1989) (holding that defendant was not entitled to withdraw his guilty plea based on his counsel's failure to inform him of the deportation consequences of his plea); *United States v. Yearwood,* 863 F.2d 6, 8 (4th Cir.1988) (holding that counsel's failure to advise his client that deportation may result from a guilty plea does not constitute ineffective assistance of counsel) (citing *United States v. Campbell,* 778 F.2d 764, 768 (11th Cir.1985)); *United States v. Gavilan,* 761 F.2d 226, 228 (5th Cir.1985); *United States v. Santelises,* 509 F.2d 703, 704 (2d Cir.1975). *See also Zigta v. Commonwealth,* 38 Va.App. 149, 154–155, 562 S.E.2d 347 (2002) (citing, *inter alia, Yearwood,* 863 F.2d at 6) (holding that a trial court's failure to inform the alien of the immigration consequences of his plea was not grounds for concluding that his plea was not "voluntary and intelligent"); *see also Hameed v. Commonwealth,* 28 Va. Cir. 129, 1992 WL 884664, *3 (Va. Cir. Ct.1992) (rejecting an alien's ineffective assistance of counsel argument, which was based on his counsel's failure to inform him of the immigration consequences of his plea). Yet, this general rule may not operate in circumstances where, as is perhaps true here, the collateral consequences of a plea are so dire and so proximate that the failure to inform a defendant of them must constitute ineffective assistance of counsel. *See United States v. Mora–Gomez,* 875 F.Supp. 1208, 1212 n.9 (E.D.Va.1995) (noting in dictum that

a stay is denied due to lack of subject matter jurisdiction.

An appropriate Order will follow.

"while the greater weight of authority is to the contrary," "there is no clear reason in principle or policy why...a defense attorney's failure to mention the deportation consequences of a plea might also constitute ineffective assistance in some circumstances").