COURT OF APPEALS OF VIRGINIA


Present: Judges Willis, Agee and Senior Judge Overton
Argued at Alexandria, Virginia


REZENE MEHART ZIGTA, S/K/A
 REZENE MEHRT ZIGTA
                                          OPINION BY
v.     Record No. 0145-01-4          JUDGE G. STEVEN AGEE
                                         APRIL 23, 2002
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                        Paul F. Sheridan, Judge

              Thomas W. Farquhar (Peter L. Sissman, on
              briefs), for appellant.

              Thomas D. Bagwell, Senior Assistant Attorney
              General (Randolph A. Beales, Attorney
              General, on brief), for appellee.


        Rezene Mehart Zigta (Zigta) was convicted in the Arlington

County Circuit Court of rape, in violation of Code § 18.2-61,

pursuant to an Alford[1] guilty plea.  He was sentenced to serve a

fifteen-year term of imprisonment.  On appeal he contends the

trial court erred by refusing to allow him to withdraw his plea

prior to sentencing.  For the following reasons, we affirm the

decision of the trial court.

_____

        [1] The so-called "Alford plea" takes its name from North
Carolina v. Alford, 420 U.S. 25 (1970).  An Alford guilty plea
is one where the defendant refuses to admit guilt, or even
protests his innocence, but, nonetheless, wants to enter a
guilty plea.  The Supreme Court ruled that an admission of guilt
is not a constitutional requisite to the imposition of a
criminal penalty.

                          I.  BACKGROUND

     Zigta, an Eritrean citizen, was indicted for the rape of a
six-year-old child.  He originally pleaded "not guilty," but
withdrew his plea prior to trial and entered an Alford plea of
guilty.  Before entering the Alford plea, Zigta signed a Plea
Agreement Memorandum, which advised him of the consequences of
his plea.  Zigta acknowledged in the memorandum that he
understood the elements of the charges against him, that he would
be waiving any objections to the Commonwealth's evidence, that he
was giving up his right to have a speedy trial, the right to a
jury trial, the right to confront witnesses and the rights to
compel evidence, to remain silent, to appeal, to refuse to
testify and to require the Commonwealth to prove its case against
him beyond a reasonable doubt.  Zigta reviewed the memorandum
with his attorney and an interpreter.

     Although Zigta spoke some English, the trial court used an
interpreter.[2]  Through the interpreter, the trial court
extensively inquired of Zigta about his understanding of what it
meant to plead guilty, the rights he would waive and the sentence
that could be imposed.  Zigta acknowledged that he had read and
understood the Plea Agreement Memorandum, that he had ample time
to discuss his case with counsel, and that he

_____

     [2] Zigta raised no claim at trial or on appeal alleging
inability, by reason of his limited knowledge of the English
language, to understand and comprehend the proceedings.

understood what it meant to enter an <u>Alford</u> plea.  The trial court found that Zigta's plea was freely, intelligently and voluntarily given, and it accepted his plea.  The trial court did not inform Zigta of any possible immigration consequences of his plea.  The case was set for sentencing at a later date.

Prior to sentencing, Zigta filed a motion to withdraw his guilty plea.  He contended his plea was not knowingly, intelligently and voluntarily made because "[h]e, an Eritrean in this country under political asylum did not understand the immigration consequences (deportation to his home country where he faces persecution)."  The trial court denied the motion, finding it was not obligated to inform Zigta about the deportation consequences of his conviction.

## II.  ANALYSIS

On appeal, Zigta contends the trial court erred in denying his motion to withdraw his guilty plea and presents a question of first impression in the Commonwealth.  Zigta contends that because his plea was made without specific instruction by the trial court as to the possible immigration consequences, his plea was not knowingly and voluntarily made.  He avers the Due Process Clauses of the United States and Virginia Constitutions and Rule 3A:8(b) of the Rules of the Supreme Court of Virginia do not permit the acceptance of a guilty plea and waiver of rights in that circumstance.  Accordingly, he contends the trial court abused its discretion by refusing to allow him to withdraw his plea.  We disagree and affirm the trial court's decision to deny Zigta's motion to withdraw his plea.

## A.  STANDARD OF REVIEW

"Code § 19.2-296 allows a defendant to withdraw a guilty plea before sentence is imposed." Jones v. Commonwealth, 29 Va. App. 503, 511, 513 S.E.2d 431, 435 (1999). "Whether a defendant should be permitted to withdraw a guilty plea rests within the sound discretion of the trial court to be determined based on the facts and circumstances of each case." Hall v. Commonwealth, 30 Va. App. 74, 79, 515 S.E.2d 343, 346 (1999). "The court's finding as to the credibility of witnesses and the weight of the evidence in support of a motion to withdraw a guilty plea will not be disturbed unless plainly wrong or without evidence to support it." Jones, 29 Va. App. at 512, 513 S.E.2d at 435.

> "As in other cases of discretionary power, no general rule can be laid down as to when a defendant will be permitted to withdraw his plea. The decision in each case must depend to a great extent on the particular attendant circumstances."

Parris v. Commonwealth, 189 Va. 321, 325, 52 S.E.2d 872, 874 (1949) (quoting 14 Am. Jur. 2d Criminal Law § 287 (1938)).

Determining whether the trial court erred in declining to allow a withdrawal of a guilty plea "requires an examination of the circumstances confronting [the] accused immediately prior to and at the time he pleaded to the charge." Id. at 322, 52 S.E.2d at 872.

B. CONSTITUTIONAL REQUIREMENTS FOR ACCEPTANCE OF A PLEA

The United States Constitution provides an individual with several rights upon being accused of a crime, which apply to those accused in state courts by reason of the Fourteenth Amendment. "First, is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment . . . . Second,

is the right to trial by jury.  Third, is the right to confront one's accusers."  Boykin v. Alabama, 395 U.S. 238, 243 (1969) (internal citations omitted).  In order to ensure that these and other constitutional rights are adequately protected, the trial court is required to determine whether a defendant's decision to waive them by pleading guilty "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant."  North Carolina v. Alford, 400 U.S. 25, 31 (1970).

It is clear from the record that the trial court inquired, employing an interpreter, as to Zigta's knowledge of these rights, and his voluntary, intelligent decision to waive them. In addition, the trial court extensively examined Zigta as to whether he understood the elements of the charges against him, that he would be waiving any objections of the Commonwealth's evidence, and that he was giving up his rights to have a speedy trial, to have a jury trial, to confront witnesses, to compel evidence, to remain silent, to appeal, to refuse to testify and to require the Commonwealth to prove its case against him beyond a reasonable doubt.  Zigta informed the trial court that he understood his rights and the consequences of his plea.  The trial court specifically found Zigta's plea was "freely, voluntarily and intelligently" made and that competent counsel ably represented him.  Zigta's guilty plea was, therefore, knowingly and voluntarily entered.

The trial court's determination is not rendered constitutionally infirm by Zigta's contention that he was not aware of the immigration consequences of his guilty plea.  A

trial court is not required to discuss every nuance of the law regarding a defendant's plea in order to render a guilty plea voluntary and knowing. The collateral consequences of pleading guilty are numerous, with some consequences being more direct than others. Regardless, collateral consequences are irrelevant to the determination of whether a guilty plea was entered voluntarily and knowingly. A defendant need not be advised of the collateral consequences of a guilty plea unless otherwise mandated. See Bell v. State of North Carolina, 576 F.2d 564 (4th Cir. 1978); Cuthrell v. Director, 475 F.2d 1364 (4th Cir. 1973). There is no such mandate in Virginia as to immigration matters.

The fact that deportation may result from a conviction is a collateral consequence of a guilty plea. See United States v. Amador-Leal, 276 F.3d 511 (9th Cir. 2002); United States v. Gonzalez, 202 F.3d 20 (1st Cir. 2000); United States v. Yearwood, 863 F.3d 6 (4th Cir. 1988).[3] Deportation is a collateral

---

[3] See also United States v. Osiemi, 980 F.2d 344 (5th Cir. 1993); Varela v. Kaiser, 976 F.2d 1357 (10th Cir. 1992); United States v. Montoya, 891 F.2d 1273 (7th Cir. 1989); United States v. Romero-Vilca, 850 F.2d 177 (3d Cir. 1988); Downs-Morgan v. United States, 765 F.2d 1534 (11th Cir. 1985); Fruchtman v. Kenton, 531 F.2d 946 (9th Cir. 1976); Robinson v. State, 730 So.2d 252 (Ala. Crim. App. 1998); State v. Vera, 766 P.2d 110 (Ariz. Ct. App. 1988); People v. Pozo, 746 P.2d 523 (Colo. 1987); Orellanes v. State, 790 So.2d 613 (Fl. App. 2001); Michigan v. Davidovich, 618 N.W.2d 579 (Mich. 2000); Alanis v. State, 583 N.W.2d 573 (Minn. 1998); State v. Clark, 926 S.W.2d 22 (Mo. 1996); Barajas v. Nevada, 991 P.2d 474 (Nev. 1999); State v. Chung, 510 A.2d 72 (N.J. App. 1986); People v. Ford, 657 N.E.2d 265 (N.Y. 1995); North Dakota v. Abdullahi, 607 N.W.2d 561 (N.D. 2000); Commonwealth v. Frometa, 555 A.2d 92 (Pa. 1989); State v. Desir, 766 A.2d 374 (R.I. 2001); State v. Jimenez, 987 S.W.2d 886 (Tex. 1999); State v. Rodriguez, 585 N.W.2d 701 (Wis. App. 1998); see also, Collateral Consequences of Guilty Pleas in the Federal Criminal Justice System, 16 Harvard C.R.C.L.L.Rev. 157 (1981).

consequence of the criminal conviction because it arises through the efforts of an arm of government over which the trial court has no control and which is not part of the underlying criminal proceeding. The immigration consequences of Zigta's criminal conviction remain subject to the discretion of entities other than the trial court. As such, we cannot find that the trial court's failure to advise him on immigration rules affected his substantial rights as to the crime for which he was charged and, thus, the voluntariness of his plea.

Our decision is consistent with those cases previously cited from other jurisdictions. For example, in Gonzalez, the defendant, a native of Cuba, pled guilty to mail fraud. Prior to sentencing, he moved to withdraw his plea pursuant to Rule 32(e) of the Federal Rules of Criminal Procedure, the equivalent to our Code § 19.2-296, arguing he had not been informed of adverse immigration consequences until after the plea was made. The district court denied the motion. On appeal, the First Circuit Court of Appeals affirmed the decision of the district court, holding "deportation is only a collateral concomitant to criminal conviction." 202 F.3d at 25.

> What renders the plea's immigration effects "collateral" is not that they arise "virtually by operation of law," but the fact that deportation is "not the sentence of the court which accepts the plea but of another agency over which the trial judge has no control and for which he has no responsibility." . . . However "automatically" [the defendant's] deportation – or administrative detention –might follow from his conviction, it remains beyond the control and responsibility of the district court in which that conviction was entered and it thus remains a collateral consequence thereof.

Id. at 27 (internal citations omitted).

> [B]ecause deportation is a collateral consequence of a guilty plea, district courts are not obliged to grant plea withdrawal motions filed by defendants who realize, post-plea, the immigration implications of their conviction.

Id. at 28.

C.  RULE 3A:8(b) REQUIREMENTS FOR ACCEPTANCE OF A PLEA

We also find no merit to Zigta's contention that Rule 3A:8(b) requires a reversal of the trial court's denial of the motion.

Rule 3A:8 provides, in pertinent part, that a trial court

> shall not accept a plea of guilty or nolo contendere without first determining that the plea is made voluntarily with an understanding of the nature of the charge and the consequences of the plea.

Rule 3A:8(b).  The rule restates the due process requirements of Boykin.  James v. Commonwealth, 18 Va. App. 746, 750, 446 S.E.2d 900, 903 (1994).  As such, the rule simply requires that prior to accepting a defendant's plea, the trial court must determine if the defendant is aware of his constitutional rights, the nature of the charges against him, and whether the plea is intelligently and voluntarily made, all of which must appear on the record. Sisk v. Commonwealth, 3 Va. App. 459, 463, 350 S.E.2d 676, 679 (1986) (citing Boykin, 395 U.S. 238; Rule 3A:8(b), Forms 6 and 7).[4]

The record in the case at bar clearly demonstrates that the trial court advised Zigta that the plea of guilty was a waiver of all of his rights incident to trial and inquired of him as to

---

[4] Rule 3A:8(b) is similar to Rule 11 of the Federal Rules of Criminal Procedure, which also does not place a duty upon the trial court to advise a defendant of collateral consequences in order for the plea to be entered knowingly and voluntarily.  See Gonzales, 202 F.3d 20.

his understanding of the plea in regards to these rights.  The trial court was not required to advise Zigta on any other potential consequences.  Neither Rule 3A:8(b) nor any statute or case law in Virginia requires a trial court to inform a defendant of any collateral consequences that may arise upon the entry of a guilty plea.  The immigration implications of a guilty plea are a collateral consequence.

Zigta's citation to cases in other jurisdictions where trial courts have been held to have a duty to advise immigrants of potential deportation consequences is unpersuasive because those jurisdictions have explicitly established a duty by rule or statute.[5]  Virginia has no such requirement.

The record reflects Zigta knowingly and voluntarily waived his constitutional rights before the trial court accepted his guilty plea, as required by Boykin and Rule 3A:8(b).  Thus, the trial court did not abuse its discretion in denying Zigta's motion to withdraw his plea of guilty on the basis that it was unknowing and involuntary, simply because he was not advised of the immigration consequences of his plea.  We affirm the decision of the trial court.

Affirmed.

---

[5] See, e.g., Con. General Statutes § 54-1j(a); Florida Rule of Criminal Procedure 3.172(c)(8); Maryland Rule 4-242(e); Washington RCW 10.40.200(2); Wis. Stat. § 971.08(1)(c).