# CIRCUIT COURT OF FAIRFAX COUNTY

Adhem R. Ibrahim

v.

Superintendent,
Rappahannock Regional Jail

## Case No. CL-2010-16601

BY JUDGE RANDY I. BELLOWS

March 17, 2011

On January 18, 2011, Respondent Superintendent of the Rappahannock Regional Jail filed a Demurrer to the Petitioner Adhem R. Ibrahim's Petition for Writ of Habeas Corpus. The Court sent a letter to counsel on January 25, 2011, regarding responsive filings to the Demurrer. After reviewing the parties' briefs, the Court is now prepared to rule.

## I. *Background*

Mr. Ibrahim became a lawful permanent resident of the United States or a "green card holder" in 1992. He is not a full citizen of the United States.

On January 26, 2009, Mr. Ibrahim was charged with felony possession of marijuana with intent to distribute. Mr. Ibrahim pleaded

guilty to the misdemeanor offense of possession with intent to distribute marijuana on January 27, 2010, in the Fairfax County General District Court. The General District Court sentenced Mr. Ibrahim to ninety days in jail but suspended the entire active jail sentence.

Although Mr. Ibrahim was convicted of a misdemeanor, a drug trafficking crime involving marijuana is considered an "aggravated felony" under the Immigration and Nationality Act, and this offense made him subject to removal. *See* 8 U.S.C. § 1227(a)(2)(A)(iii) ("any alien who is convicted of an aggravated felony at any time after admission is deportable"); *see also* 8 U.S.C. § 1101(a)(43) ("[t]he term `aggravated felony' means . . . illicit trafficking in a controlled substance (as defined in § 102 of the Controlled Substances Act [21 U.S.C. § 802]), including a drug trafficking crime (as defined in § 924(c) of title 18, United States Code)"). Mr. Ibrahim is currently being held pending removal proceedings in the Executive Office of Immigration Review.

Mr. Ibrahim filed his Notice and Petition for Writ of Habeas Corpus in this Court on November 23, 2010. Mr. Ibrahim argues that his trial counsel misadvised him of the immigration consequences of a guilty plea. Trial counsel candidly acknowledges this. Counsel "specifically told Mr. Ibrahim that in [his] opinion, as his attorney, he would suffer no adverse consequences to his immigration status as a result of this conviction." (Affidavit of Trial Counsel, ¶ 3, Jan. 28, 2011.)

It appears that Respondent does not contest that trial counsel affirmatively misadvised Mr. Ibrahim. (Superintendent's Reply to Petitioner's Response to Demurrer 2, n. 2 ("In his first response, Petitioner states his understanding that the undersigned discussed the case with Petitioner's criminal defense attorney. The undersigned did discuss the case with criminal defense counsel, who made a statement similar to the one set forth in the affidavit Petitioner has submitted. Accordingly, the Demurrer made no argument that Petitioner was given correct advice concerning the immigration consequences of his guilty plea.") If, however, Respondent does contest this issue, the matter must be resolved at an evidentiary hearing.

Petitioner maintains that this affirmative misadvice constituted ineffective assistance of counsel under the standard outlined in *Strickland v. Washington*, 466 U.S. 668 (1984). Petitioner further argues that the ineffective assistance of his trial counsel rendered his plea unknowing and involuntary and, thereby, negated his guilty plea. *See Gardner v. Warden*, 222 Va. 491, 493, 281 S.E.2d 876, 877 (1981) (*citing Boykin v. Alabama*, 395 U.S. 238, 242, 89 S. Ct. 1709, 171, 23 L. Ed. 2d 274 (1969)); *see also* Va. Sup. Ct. R. 3A:8(b). Petitioner also notes that the case of *Padilla v. Kentucky*, 130 S. Ct. 1473, 1486 (2010), states "that counsel must inform her client whether his plea carries a risk of deportation."

In his Demurrer, Respondent argues that the writ of habeas corpus is an extraordinary remedy which is not appropriate in this case because *Padilla* announced a "new rule" that should not be applied retroactively to Mr. Ibrahim's case. *Teague v. Lane*, 489 U.S. 288, 310 (1989). Respondent also argues that affirmative misinformation regarding the immigration consequences of a guilty plea did not constitute ineffective assistance prior to *Padilla.*

## II. *Analysis*

### A. *Legal Standards*

"The writ of habeas corpus ad subjiciendum shall be granted forthwith by the Supreme Court or any circuit court, to any person who shall apply for the same by petition, showing by affidavits or other evidence probable cause to believe that he is detained without lawful authority." Va. Code Ann. § 8.01-654(A)(1). A petitioner may challenge the lawfulness of his detention if he alleges that he received ineffective assistance of counsel. *See* Va. Code Ann. § 8.01-654(B)(6). "It is well settled that a person . . . who seeks his release by habeas corpus on the grounds of ineffective assistance of counsel has the burden of proving the charge made by a preponderance of the evidence." *Peyton v. Ellyson*, 207 Va. 423, 426 (1966).

An attorney has provided ineffective assistance to his client if (1) "counsel's representation fell below an objective standard of reasonableness," *Strickland*, 466 U.S. at 688, and (2) there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 698. In cases where the petitioner challenges a conviction based on a guilty plea, the petitioner must establish that, but for counsel's error, he would not have pleaded guilty and "would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Lewis v. Warden*, 274 Va. 93, 118, 645 S.E.2d 492, 506 (2007).

### B. *Findings*

The questions posed by this case are (i) whether misadvice regarding immigration consequences of a guilty plea constituted ineffective assistance of counsel prior to the United States Supreme Court's decision in *Padilla*; (ii) if misadvice did not constitute ineffective assistance prior to *Padilla*, whether *Padilla* should be applied retroactively to this case; and (iii) whether Mr. Ibrahim is entitled to habeas relief based on the standard articulated in *Strickland.*

Respondent contends that giving a client misinformation about the effect of a guilty plea on the client's immigration status did not constitute ineffective assistance of counsel prior to *Padilla*. Based on its review of pertinent case law, the Court disagrees and finds that such misadvice constituted ineffective assistance of counsel. In Virginia, immigration consequences, including deportation, were considered "collateral consequences" of a guilty plea before *Padilla*. *See Zigta v. Commonwealth*, 38 Va. App. 149, 156, 562 S.E.2d 347, 350 (2002); *cf. Padilla*, 130 S.Ct. at 1482 ("[d]eportation as a consequence of a criminal conviction is, because of its close connection to the criminal process, uniquely difficult to classify as either a direct or a collateral consequence. The collateral versus direct distinction is thus ill-suited to evaluating a *Strickland* claim concerning the specific risk of deportation.") Virginia defense counsel, therefore, were not required to advise clients of the immigration consequences of a guilty plea prior to the United States Supreme Court's decision in *Padilla*. *Id*. 38 Va. at 155, 562 S.E.2d at 349-50.

However, prior to *Padilla*, the United States Court of Appeals for the Fourth Circuit held that:

> where the client asks for advice about a "collateral consequence" and relies upon it in deciding whether to plead guilty, the attorney must not grossly misinform his client about the law. *Strader v. Garrison*, 611 F.2d 61 (4th Cir. 1979). . . . We cannot expect criminal defense lawyers to be seers, but we must demand that they at least apprise themselves of the applicable law and provide their clients with a reasonably accurate description of it.

*Ostrander v. Green*, 46 F.3d 347, 355 (4th Cir. 1995), *overruled on other grounds by O'Dell v. Netherland*, 95 F.3d 1214 (4th Cir. 1996). Similarly, in *United States v. Gajendragadkar*, 1998 U.S. App. LEXIS 11656, *5-6 (1998) (unpublished), the United States Court of Appeals for the Fourth Circuit found that the attorney's erroneous assurance that the defendant would not be subject to deportation as a result of his plea "falls below prevailing standards of professional competence . . . even if the consequence might otherwise have been described as 'collateral'." As a result, the Court of Appeals concluded "that counsel's performance was constitutionally deficient." *Id*. at *6. In other words, the advice given was not "within the range of competence demanded of attorneys in criminal cases." *Id*. at *3 (citing *Strickland*, 466 U.S. at 669) (internal citations omitted).

Significantly, two *pre-Padilla* Virginia circuit court cases also hold that misadvice regarding immigration consequences amounts to ineffective assistance of counsel. In *Commonwealth v. Tahmas*, 2005 Va. Cir. LEXIS 132, *2 (Fairfax 2005), trial counsel "affirmatively advised" the defendant that

relief would be available if there were negative immigration consequences of his conviction but that deportation was not a possibility as long as he received a jail sentence of less than twelve months. The Honorable T. Terrence Ney determined that these "affirmative misstatements" distinguished this case from *Zigta v. Commonwealth* because the defendant in *Zigta* "received no advice upon which to rely when he entered his plea. Here [defendant] received and relied upon wrong advice." *Id.* at *8. That distinction persuaded the court that counsel provided ineffective assistance to his client as the "attorney had a duty not to give incorrect advice." *Id.* at *12.

Similarly, in the case of *Commonwealth v. Mohamed*, 71 Va. Cir. 383 (Arlington 2006), trial counsel told his client that relief would be available from any adverse immigration consequences of his plea due to the fact that he had been in the United States for more than ten years and because grand larceny did not qualify as an "aggravated felony" under the Immigration and Nationality Act. The Honorable William T. Newman, Jr., found that the Sixth Amendment rights of the defendant had been violated when he received that advice because he pleaded guilty without knowing that this "single criminal conviction could result in deportation without the possibility of discretionary relief." *Id.* at 385.

The Court is not aware of any Virginia Supreme Court or Court of Appeals precedent on the issue of whether such misstatements by an attorney amount to ineffective assistance of counsel. However, other jurisdictions that have considered the issue have held that "an attorney's performance is deficient if he incorrectly informs his client that deportation is not a consequence of a guilty plea." *Tahmas*, 2005 Va. Cir. LEXIS at *10-11; *see e.g., United States v. Couto*, 311 F.3d 179 (2d Cir. 2002) (holding that an attorney's affirmative misrepresentations about the deportation consequences of a guilty plea rendered the defendant's plea involuntary by counsel's ineffective assistance); *United States v. Kwan*, 407 F.3d 1005 (9th Cir. 2005) (distinguishing between an attorney's failure to advise and misadvice about immigration consequences in holding that misadvising a client constitutes ineffective assistance of counsel); *Utah v. Rojas-Martinez*, 73 P.3d 967 (Utah 2003) (holding that counsel's affirmative misrepresentations about immigration consequences present an objectively unreasonable deficiency); *United States v. Shaw*, 2004 U.S. Dist. LEXIS 15942 (2004) (holding that attorney's statement that there would be no immigration consequences of a guilty plea was "flatly wrong" and objectively unreasonable under *Strickland*); *State v. Paredez*, 136 N.M. 533, 538 (2004) ("[i]f a defendant's attorney informs him or her that deportation will not be a consequence of a guilty plea when the guilty plea renders deportation a possibility, then the attorney's performance would be deficient"); *State v. Zarate*, 264 Neb. 690, 698-99 (2002) ("[w]e observe that the circumstances of the instant case are distinguishable from situations in which a defendant

has been offered affirmative misadvice or misstatements regarding the immigration consequences of a guilty plea. Federal and state courts have recognized that counsel's affirmative misadvice or misstatements regarding deportation or other collateral consequences of a plea may, under certain circumstances, constitute ineffective assistance of counsel.") The weight of authority favors the conclusion that misadvice constitutes ineffective assistance. Although the courts in *Al Kokabani v. United States*, 2010 U.S. Dist. LEXIS 107574 (E.D. N.C. Oct. 7, 2010), and *Toribio-Ascencio v. United States*, 2010 U.S. Dist. LEXIS 113549 (E.D. N.C. Oct. 25, 2010), found that misadvice regarding immigration did not constitute ineffective assistance, that conclusion was contrary to the findings of courts within the Commonwealth of Virginia and the cases cited above.

The decisions cited above are consistent with the "prevailing professional norms" that existed at the time Mr. Ibrahim pleaded guilty to the underlying offense. *Strickland*, 466 U.S. at 669. "The American Bar Association's Standards for Criminal Justice provide that, if a defendant will face deportation as a result of a conviction, defense counsel `should fully advise the defendant of these consequences'." *INS v. St. Cyr*, 533 U.S. 289, 323, n. 48, 150 L. Ed. 2d 347, 121 S. Ct. 2271 (2001) (*quoting* 3 ABA Standards for Criminal Justice 14-3.2, Comment 75 (2d ed. 1982)). Also, attorneys have a general duty of competence which includes being apprised of applicable law and giving advice on a myriad of potential client concerns. *See* Virginia Rules of Professional Conduct, Preamble [1] ("[a]s advisor, a lawyer provides a client with an informed understanding of the client's legal rights and obligations and explains their practical implications"); *id.*, Rule 1:1 ("[a] lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation"); *id.*, Rule 2.1 ("[i]n representing a client, a lawyer shall exercise independent professional judgment and render candid advice. In rendering advice, a lawyer may refer not only to law but to other considerations such as moral, economic, social, and political factors, that may be relevant to the client's situation.") It follows that the advice given must be reasonably correct.

In summary, while defense attorneys in the Commonwealth of Virginia were not required to affirmatively advise their clients of immigration consequences prior to the *Padilla* decision, they had the duty to give correct immigration advice whenever they chose to do so. This principle predates *Padilla,* and, therefore, the Court does not need to reach the issue of whether *Padilla* applies retroactively to Mr. Ibrahim's case.

Mr. Ibrahim's entitlement to habeas relief can only be conclusively determined after an evidentiary hearing. This letter opinion addresses the legal principles applicable to the first prong of *Strickland*, i.e., whether misadvice on immigration consequences prior to entry of a plea would meet the *Strickland* standard that "counsel's representation fell below an

objective standard of reasonableness." *Strickland,* 466 U.S. at 688. Whether the facts support such a finding depends on whether Mr. Ibrahim is able to establish that he did, in fact, receive erroneous advice from his trial counsel regarding the immigration consequences of his plea. While there is some indication that Respondent may be conceding this issue, *see* footnote 1, *supra,* it is not entirely clear, and Respondent is entitled to an evidentiary hearing on the matter if he wishes. Regardless of Respondent's position on the first prong of *Strickland,* an evidentiary hearing must still be held on the second prong, prejudice. Mr. Ibrahim must demonstrate that, but for counsel's error, he would not have pleaded guilty and "would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 59 (1985). Respondent clearly contests this issue.

May 16, 2011

On April 29, 2011, this Court conducted an evidentiary hearing on the second prong of *Strickland v. Washington,* 466 U.S. 668 (1984), namely, whether Petitioner Adhem R. Ibrahim was prejudiced as the result of the ineffective assistance of counsel provided by his trial counsel in connection with his guilty plea in a criminal case before the Fairfax County General District Court. During the course of that hearing, counsel for Respondent Superintendent of the Rappahannock Regional Jail made an oral motion to dismiss Mr. Ibrahim's Petition for Writ of Habeas Corpus ("Petition") for mootness. The Court took the matter under advisement, and both parties subsequently submitted briefs on the issue. After reviewing the parties' briefs, the Court is now prepared to rule.

## I. *Summary*

Petitioner is incarcerated in federal custody at the Rappahannock Regional Jail, facing deportation due solely to his January 27, 2010, conviction in the Fairfax County General District Court for misdemeanor possession with intent to distribute marijuana, which is considered an aggravated felony for deportation purposes. *See* 8 U.S.C. § 1227(a)(2)(A)(iii) ("any alien who is convicted of an aggravated felony at any time after admission is deportable"); *see also* 8 U.S.C. § 1101(a)(43) ("[t]he term 'aggravated felony' means . . . illicit trafficking in a controlled substance (as defined in § 102 of the Controlled Substances Act [21 U.S.C. § 802]), including a drug trafficking crime (as defined in § 924(c) of title 18, United States Code)"). By writ of habeas corpus, he petitions this Court to take one action, i.e., to vacate the underlying state conviction, which is the sole basis of his federal incarceration. In support of this assertion, counsel for Petitioner has provided the "Notice to Appear" from the U.S. Department of Homeland Security ("DHS") dated August 13, 2010, in which DHS

alleges that Petitioner is a lawful permanent resident who is removable as he was, "on January 27, 2010, convicted in the General District Court [at] Fairfax County, Virginia, for the offense of sell, give, distribute less than one half ounce of marijuana, in violation of Va. Code 18.2-248.1," which the Court makes a part of the record of these proceedings. No other reasons for removal under the Immigration and Nationality Act were given. Respondent has not contested that this underlying Virginia conviction is the sole basis for Petitioner's current federal detentions. While this Court has no authority or jurisdiction to order the release of Petitioner from federal custody, the Court does have authority and jurisdiction to vacate the underlying state conviction.

For the reasons stated herein, the writ is granted. Petitioner's conviction in the Fairfax County General District Court, Case No. CO9302552, for possession with intent to distribute marijuana is hereby vacated and proceedings in the case shall resume in the General District Court or the Circuit Court, subject to the discretion of the Office of the Commonwealth's Attorney as to how it wishes to proceed. This Court makes no order with respect to the petitioner's federal custodial status, as such an order would be beyond the authority and jurisdiction of this Court.

## II. *Background*

In the course of the instant proceeding, and in its prior letter opinion of March 17, 2011, this Court has addressed and resolved a number of questions, specifically, as follows:

1. Does the Circuit Court have jurisdiction to hear a habeas corpus proceeding where the underlying misdemeanor proceeding took place in the General District Court and the petitioner received an entirely suspended period of incarceration? The Court answered this question in the affirmative.

2. Where defense counsel gives erroneous and prejudicial advice to a petitioner regarding the immigration/deportation consequences of a guilty plea, is the petitioner entitled to habeas relief? The Court answered this question in the affirmative.

3. In order to determine whether a petitioner is entitled to habeas relief must the Court first determine whether the United States Supreme Court's decision in *Padilla v. Kentucky*, 130 S. Ct. 1473, 1486 (2010), is retroactive? The Court answered this question in the negative, holding that, even before *Padilla*, misadvice on immigration and/or deportation consequences of a guilty plea — in contrast with non-advice — has been grounds for vacating a guilty plea in Virginia.

4. Was Petitioner given erroneous advice regarding the immigration and/or deportation consequences of his guilty plea? The Court answered this question in the affirmative and notes that counsel for Respondent

Superintendent of the Rappahannock Regional Jail does not contest this finding.

5. Did such erroneous advice regarding the immigration/deportation consequences of his guilty plea constitute ineffective assistance of counsel under the first prong of Strickland v. Washington, 466 U.S. 668 (1984)? The Court answered this question in the affirmative.

6. Was such erroneous advice regarding the immigration and/or deportation consequences of his guilty plea prejudicial under the second prong of Strickland, i.e., would Petitioner have not pleaded guilty and instead gone to trial but for the erroneous advice? At the evidentiary hearing conducted on April 29, 2011, the Court found that the prejudice prong of *Strickland* had been established; in other words, but for defense counsel's erroneous advice, Petitioner would have proceeded to trial. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Lewis v. Warden*, 274 Va. 93, 118, 645 S.E.2d 492, 506 (2007).

This brings the Court to the only two remaining issues: (i) Does the Court retain jurisdiction over this matter? (ii) Even if the Court retains jurisdiction, is the matter moot? If the answer to each of these questions is in the affirmative, Petitioner is entitled to the relief he seeks. If the answer to either of these questions is in the negative, this Court can give Petitioner no relief.

Both of the foregoing questions arise out of the fact that, after the filing of the Petition and during its pendency, the period of time within which the suspended sentence could have been revoked had expired, specifically on January 27, 2011. During the April 29 hearing, Respondent moved to strike the Petition on that basis, asserting that the Petition was moot and the Court no longer had jurisdiction. In its Brief in Support of Oral Motion to Dismiss for Mootness, Respondent further argued that there is no order that this Court could enter that would directly impact Petitioner's confinement because his Virginia sentence is complete. *See Carroll v. Johnson*, 278 Va. 683, 694, 685 S.E.2d 647, 652 (2009). Therefore, Respondent argued, while this Court acquired jurisdiction when the Petition was filed because Petitioner's suspended sentence had not expired, Va. Code § 8.01-654(A)(2), that Petition became moot after the period of suspension ended.

In his Objection to Respondent's Brief in Support of Oral Motion to Dismiss, Petitioner argued that the Petition is not moot as he is still being unlawfully detained based on the underlying state conviction and an actual case or controversy remains. Petitioner argues that he is "in custody" as this Court still has a level of control over him. *See McClenny v. Murray*, 246 Va. 132, 134, 431 S.E.2d 330 (1993). Petitioner also notes that "when a court acquires jurisdiction of the subject matter and the person, it retains jurisdiction until the matter before it has been fully adjudicated." *Kline v.*

*Commonwealth*, 2010 Va. Cir. LEXIS 70, 11 (citing *Lang v. Commonwealth*, 205 Va. 511, 514, 137 S.E.2d 896 (1964)).

## III. *Analysis*

"The writ of habeas corpus ad subjiciendum shall be granted forthwith by the Supreme Court or any circuit court, to any person who shall apply for the same by petition, showing by affidavits or other evidence probable cause to believe that he is detained without lawful authority." Va. Code Ann. § 8.01-654(A)(1). When a petitioner is being "held under criminal process" based on a district court conviction, "only the circuit court for the city or county wherein the district court sits shall have the authority to issue writs of habeas corpus." Va. Code Ann. § 8.01-654(B)(1). A petition for writ of habeas corpus "may allege detention without lawful authority through challenge to a conviction, although the sentence imposed for such conviction is suspended or is to be served subsequently to the sentence currently being served by petitioner." Va. Code Ann. § 8.01-654(B)(3). The habeas corpus statute is remedial and, therefore, must be "construed liberally." *Carroll*, 278 Va. at 693 (citing *Greenberg v. Commonwealth*, 255 Va. 594, 600, 499 S.E.2d 266, 269 (1998)).

However, "courts are not constituted . . . to render advisory opinions [or] to decide moot questions. . . ." *City of Fairfax v. Shanklin*, 205 Va. 227, 229-30, 135 S.E.2d 773, 776 (1964); *see also Blue Cross & Blue Shield v. St. Mary's Hospital*, 245 Va. 24, 35, 426 S.E.2d 117, 123 (1993); *Erie Ins. Group v. Hughes*, 240 Va. 165, 170, 393 S.E.2d 210, 212 (1990). The duty of every court "is to decide actual controversies by a judgment which can be carried into effect." *Mills v. Green*, 159 U.S. 651, 653 (1895). Habeas relief may only be afforded in "cases in which an order, entered in the petitioner's favor, interpreting a conviction or a sentence, will, as a matter of law and standing alone, directly impact the duration of a petitioner's confinement." *Carroll*, 278 Va. at 694.

On the jurisdictional question, it is well-established that, if a Court properly assumes jurisdiction at the outset of the proceedings, in other words, if the petition was properly and timely filed, the Court retains jurisdiction to decide the matter. *See* Va. Code § 8.01-654(A)(2); *see also Laing v. Commonwealth*, 205 Va. 511, 514, 137 S.E.2d 896 (1964); *Erickson-Dickson v. Erickson-Dickson*, 12 Va. App. 381, 388, 404 S.E.2d 388 (1991). The mootness issue, however, is far from well-established. Indeed, this Court could find no case in the Commonwealth precisely on point, although there are both trial and appellate court decisions that address similar matters as discussed in greater detail below.

Therefore, this is a matter of first impression. This Court holds as follows: where the issue before the Court is whether to vacate a guilty plea and consequent conviction, and where the petitioner is not only facing

potential incarceration but is actually incarcerated due solely to that guilty plea and consequent conviction, the matter is not deemed moot just because he no longer is at risk of additional state incarceration. That he is in the custody of federal authorities, rather than state authorities, does not render the matter moot for, under either circumstance, the petitioner's guilty plea continues to have an immediate and profound impact on the petitioner's liberty.

*Black's Law Dictionary*'s definition of the "mootness doctrine" reads as follows: "The principle that American courts will not decide moot cases, that is, cases in which there is no longer any actual controversy." *Black's Law Dictionary* 1100 (9th ed. 2004). The term "moot" is defined by *Black's* to include "[h]aving no practical significance; hypothetical or academic." *Id.* at 1099. In the instant case, there is nothing hypothetical or academic about Petitioner's current incarceration, nor could one argue that the Petitioner's guilty plea, which is the sole reason he is incarcerated today, has "no practical significance." In short, the matter remains in "actual controversy" and, therefore, is not moot.

The Supreme Court of Virginia examined a similar issue when mootness was raised in the case of *Blair v. Peyton*, 210 Va. 416 (1970). In that case, the petitioner completed serving his sentences imposed as a result of his armed robbery convictions prior to filing his habeas petition. The Supreme Court determined that the matter was moot as "[t]he petitioner is no longer detained and there is no custody from which to discharge him." *Id.* at 417. In other words, the petitioner in *Blair* was not incarcerated or under any other restraint when he filed his petition and was merely challenging the "civil disabilities" resulting from his underlying convictions. *Id. Blair* is, therefore, distinguishable from Petitioner's case in that Petitioner is clearly in custody, albeit federal custody, as the result of his conviction.

This case is similarly distinguishable from *Kline v. Commonwealth*, 2010 Va. Cir. LEXIS 70 (2010). In *Kline*, the petitioner pleaded guilty to possession with intent to distribute marijuana after receiving incorrect advice from her trial counsel about the implications a Virginia conviction would have on her pending New Jersey case. The Circuit Court of Loudoun County determined that the petitioner met both prongs of the *Strickland* test and that her trial counsel's advice was deficient even though the "implications of the Virginia conviction on the actual length of the New Jersey sentence [were] uncertain." *Id.* at *9. However, because the petitioner was "released from all forms of legal restraint . . . and was not thereafter 'presently' detained" the Circuit Court determined that her habeas petition was moot. *Id.* at *11-12. The petitioner in *Kline* "no longer ha[d] a stake in the outcome of her habeas petition" as she was not in custody; therefore, "no case or controversy subject to habeas relief" existed. *Id.* at *12. In contrast, Petitioner is restrained as the result of his Virginia conviction and

has an extraordinary stake in the outcome of his Petition. Therefore, his habeas claim cannot be considered moot.

Whether Petitioner would be entitled to habeas relief if he was facing deportation but was not actually in federal custody is a matter which is not before the Court since Petitioner *is* indisputably in federal custody at the present time. In this respect, the Court would note that, while it did not reach the issue of whether *Padilla* would apply retroactively to Petitioner's case in its March 17 opinion, the United States Supreme Court's discussion in *Padilla* with regard to the severity of immigration consequences is significant. The Supreme Court emphasized in *Padilla* that "changes to our immigration law have dramatically raised the stakes of a noncitizen's criminal conviction. . . . These changes confirm our view that, as a matter of federal law, deportation is an integral part, indeed, sometimes the most important part of the penalty that may be imposed on noncitizen defendants who plead guilty to specified crimes." 130 S. Ct. at 1480. The Supreme Court went on to say that it has "long recognized that deportation is a particularly severe `penalty'." *Id.* at 1481.

Notably, the habeas statute in Virginia has undergone significant changes between 1970, when the Virginia Supreme Court decided *Blair v. Peyton,* and the present. In 1970, Virginia Code § 8-596 did not grant circuit courts the power to vacate convictions when the petitioner was not actually detained. *See also Smyth v. Holland,* 199 Va. 92, 97, 97 S.E.2d 745, 748 (1957) ("scope of the inquiry is limited to the propriety of the prisoner's present detention, that is, whether his detention is by due process of law.") In contrast, the modern habeas corpus statute, Virginia Code § 8.01-654, permits a petitioner to "allege detention without lawful authority through challenge to a conviction, although the sentence imposed for such conviction is suspended or is to be served subsequently to the sentence currently being served by petitioner." Va. Code Ann. § 8.01-654(B)(3).

Based in part on these statutory changes, the Supreme Court of Virginia has abrogated the "immediate release" rule in the case of *Carroll v. Johnson,* 278 Va. 683 (2009). The "immediate release rule" was established in *McDorman v. Smyth,* 187 Va. 522, 525, 47 S.E.2d 441, 443 (1948), and provided that habeas corpus relief "is available only where the release of the prisoner from his immediate detention will follow as a result of an order in his favor." In *Carroll,* the Supreme Court of Virginia noted that "the scope of the writ of habeas corpus was expanded" in Virginia subsequent to *McDorman* to include challenges to convictions when there is a suspended sentence. In light of the changes to the Virginia habeas statute cited above and United States Supreme Court authority, the Supreme Court of Virginia held that Virginia Code § 8:01-654(A)(1) "allows a petitioner to challenge the lawfulness of the entire duration of his or her detention so long as an order entered in the petitioner's favor will result in an order that, on its

face and standing alone, will directly impact the duration of the petitioner's confinement." *Carroll*, 278 Va. at 693.

This Court finds that its order vacating Petitioner's underlying conviction for possession with intent to distribute marijuana will "directly impact" the duration of his current confinement as the Virginia conviction is the sole cause of his pending immigration proceedings. The circumstances of the instant case are in stark contrast to the types of "disputes which only tangentially affect an inmate's confinement" cited in *Carroll*, "such as prison classification issues concerning the rate at which a prisoner earns good conduct or sentence credits, or challenges to parole board decisions. . . ." *Id.* at 694. In this case, Petitioner faces deportation solely as the result of his underlying Virginia conviction for an "aggravated felony" and is being held in federal custody at the Rappahannock Regional Jail pending the resolution of immigration proceedings. Therefore, it is clear to the Court that vacating the underlying conviction will "directly impact" his current confinement.

Accordingly, for the reasons stated above, a writ of habeas corpus is granted, and Petitioner's conviction in the Fairfax County General District Court, Case No. CO9302552, for possession with intent to distribute marijuana is hereby vacated. Proceedings in the case shall resume in the General District Court or the Circuit Court subject to the discretion of the Office of the Commonwealth's Attorney.