# COURT OF APPEALS OF VIRGINIA

**Record No. 1840-24-4**

MICHAEL ANTONIO HILL
v.
COMMONWEALTH OF VIRGINIA

**Record No. 0035-25-4**

MICHAEL ANTONIO HILL
v.
COMMONWEALTH OF VIRGINIA

Present: Judges Beales, Raphael and Bernhard

Opinion Issued May 12, 2026[*]

## FROM THE CIRCUIT COURT OF FREDERICK COUNTY
William W. Eldridge, IV, Judge

(Jason E. Ransom; Ransom/Silvester, PLC, on brief), for appellant. Appellant submitting on brief.

(Jason S. Miyares,[1] Attorney General; Allison M. Mentch, Assistant Attorney General, on brief), for appellee.

## MEMORANDUM OPINION
## PER CURIAM

Michael Antonio Hill pleaded guilty to second-degree murder in violation of Code

§ 18.2-32 and guilty to stabbing, cutting, or wounding another during the commission of a felony

in violation of Code § 18.2-53. Before sentencing, Hill moved to withdraw his guilty plea. After

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

a hearing, the trial court denied his motion and imposed a sentence. On appeal, Hill claims that the trial court abused its discretion by denying his motion to withdraw his guilty plea.[2]

BACKGROUND[3]

On June 20, 2022, Shannon Norcross told Hill, her boyfriend at the time, to leave her apartment so she could go shopping with Rufus Holland,[4] her friend and "crack dealer." Norcross testified that Hill "was kind of upset about that," but he did leave her apartment. When Norcross finished shopping and returned to her apartment, she called Hill to instruct him to return to her apartment. At around 10:00 p.m. that night, Norcross told Hill that she was going to visit Holland at his residence. Norcross testified, "I had sex with Rufus [Holland] for crack cocaine." She returned to her apartment about an hour later.

Norcross recalled that when she returned to her apartment, "Michael [Hill] was upset." She further recalled, "He didn't know why I was down there so long." Norcross and Hill smoked the crack cocaine that she got from Holland, and then she went to bed. She recalled, "I woke back up at 1:11 A.M," and she explained that Hill was not in bed and not in the apartment. Norcross testified that she later woke up at 3:00 a.m. and saw Hill standing next to the bed reaching for a cigarette. Norcross explained, "It was unusual for him to be out of the bed." She

---

[2] Appellant waived oral argument before this Court. Furthermore, having examined the briefs and record in this case, the panel unanimously holds that oral argument is unnecessary because "the dispositive issue or issues have been authoritatively decided, and the appellant has not argued that the case law should be overturned, extended, modified, or reversed." Code § 17.1-403(ii)(b); Rule 5A:27(b).

[3] "Under the applicable standard of review, this Court views the evidence in the light most favorable to the Commonwealth, as the prevailing party below." *Park v. Commonwealth*, 74 Va. App. 635, 643 n.2 (2022). "This principle requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Kelley v. Commonwealth*, 289 Va. 463, 467-68 (2015) (quoting *Parks v. Commonwealth*, 221 Va. 492, 498 (1980)).

[4] Holland is also referred to as "Duck" throughout the record.

asked what he was doing but then went back to sleep. When she awoke at 6:00 a.m., Hill was lying in bed awake, and Norcross testified, "That was unusual."

Norcross explained that Holland took her "to work every morning." At around 7:00 a.m., Norcross walked to Holland's residence for a ride to work. She recalled, "He didn't call me this morning so I thought that was weird so I tried to call him and it went straight to voicemail." When asked what she noticed at Holland's apartment, Norcross recalled, "Blood smeared on the door and the camera was gone." Norcross testified, "I was screaming his name. I was knocking on the door. I was going to his window."

When Holland did not answer, Norcross explained, "I ran back to my house, back to my apartment, and I said 'Michael, Michael, something is wrong with Duck [Holland]. There is blood on the door and the camera is gone.'" Hill "stood there" and looked at her before asking if she was still going to work. Norcross went to Holland's apartment again and then returned again to her apartment where she found Hill "trying to go out the door with bags." She recalled that she told Hill, "You are not going anywhere. Something is wrong with Duck [Holland]. There is blood on the door and the camera is gone." Norcross then noticed blood on Hill's shirt and asked if he "did something" to Holland. Norcross testified that Hill then pulled out a knife and said, "Look. No, baby. No. Look. There is no blood on it." Norcross told Hill to leave her apartment and called 911.

Officers subsequently entered Holland's residence and discovered Holland's dead body sitting on a chair in the living room. Lieutenant Alissa Singhas of the Frederick County Sheriff's Office responded to Holland's residence. Lieutenant Singhas testified, "I observed that he [Holland] was covered in blood." Holland also had numerous lacerations across his entire body. Lieutenant Singhas recalled, "I observed blood to be on the various walls of the residence. There was some blood on the ceiling of the residence. There was blood on the couch, on the floor, on

his person, on the ottoman, on the chair he was sitting in." The coffee table was broken, and a lamp was on the floor. In the kitchen, officers discovered blood on the side of the refrigerator and on a light fixture, and Norcross testified that the light fixture was where Holland kept his cocaine.

Officer Jeremiah Bowman interviewed Hill at the police station. During the interview, Hill told the officers that Holland was "like an uncle to [him]" and that Holland's daughter was his cousin. Hill stated that Norcross was pregnant and that he was the father. He also explained that he owed Holland money and Holland was "talking mad trash about [him]," so he went to Holland's residence to "clear the air." Hill explained that Holland said he could not be trusted and requested the money that he owed. Hill claimed that Holland also said he planned to pay for an abortion for Norcross because Hill did not deserve to have a baby. Hill told the officers that he hit Holland, that Holland struck back, and that the two wrestled on the floor. Hill claimed that he pulled a knife out of his pocket but that he dropped it, and Holland took it. Hill explained that he kneed Holland, and when Holland then dropped the knife, Hill grabbed it, and "started swinging." Hill told the officers, "There was blood all over me." Hill indicated to the officers that he probably cut Holland somewhere on the right side of his head and neck area. Dr. Carmen Coles, a medical examiner who conducted the autopsy on Holland, testified at trial as an expert in forensic pathology, and she testified that she cataloged 36 different injuries on Holland.

Officer Bowman observed cuts on Hill's hand and a two-inch laceration on his back. In a subsequent search of Norcross's apartment, police found blood on a wall next to the trash can. Hill was charged with murder, and stabbing, cutting, or wounding another during the commission of a felony. The parties scheduled Hill's jury trial for April 29, 2024.

At the beginning of the trial, the trial court empaneled and swore in the jury. After the Commonwealth finished presenting its evidence on the second day of the jury trial, Hill informed

the trial court that he wanted to plead guilty to second-degree murder and the stabbing, cutting, or wounding charge. During the plea colloquy, Hill affirmed that he discussed the charges and their elements with his counsel and that he understood what the Commonwealth must prove before he could be found guilty. Hill also affirmed that he had enough time to discuss any possible defenses to the charges, along with his decision to plead guilty, with his attorney before independently deciding to enter his plea. Hill confirmed that he was entering his plea freely and voluntarily, that he was not threatened or forced into entering his guilty plea, and that he was pleading guilty because he was, in fact, guilty.

Hill further acknowledged that by pleading guilty he was giving up his right to a trial by jury, his right not to incriminate himself, his right to confront and cross-examine his accusers, his right to defend himself, and his right to appeal the court's decision. Hill understood that he faced a maximum punishment of 40 years for second-degree murder and a maximum punishment of 5 years for stabbing, cutting, or wounding another during the commission of a felony. Hill affirmed that his attorney answered any questions he had about the plea and stated that he was satisfied with his attorney's services. He then admitted that the Commonwealth's evidence was sufficient for the trial court to convict him of the charges and said that he understood all the trial court's questions. The trial court found that Hill knowingly, voluntarily, and intelligently entered his plea, found him guilty based on his plea and the Commonwealth's evidence, and scheduled the matter for sentencing.

While awaiting sentencing, Hill moved to withdraw his guilty plea and sent several letters to the court. The trial court considered Hill's motion to withdraw his guilty plea before commencing the sentencing hearing. At the hearing on the motion, Hill testified, "I decided to plead guilty because basically after seeing all the gore on the screen there and seeing him [Holland] laying there I got upset." Hill further explained, "I figured that the jury would come

back with a guilty [verdict] . . . [on] murder one and give me life." Hill testified that had he known he was to be sentenced by the trial court, he would have proceeded with the trial and argued self-defense. He clarified, "had I been much better prepared I would have continued on" and claimed that he did not understand the trial court's questions during the plea colloquy because he was upset.

Hill told the circuit court that he went to Holland's apartment with a pocketknife but claimed that he did not intend to kill him. He said that he "swung" at Holland during an argument. At some point, Hill claimed that he grabbed Holland's wrist, lost his footing, and fell onto the glass coffee table, shattering it. He claimed that Holland likewise had a knife in his hand and was "trying to push it into [Hill's] neck." Hill explained that as he turned to get away, Holland stabbed him in the back, so Hill kicked Holland and took the knife. He claimed that he swung the knife "five or six times, maybe more" because he feared for his life, but he agreed that Holland did not have a knife in his hand when Hill stabbed him. Hill also stated that Holland was alive when he left the apartment.

On cross-examination, Hill agreed that he "had no signs of injury on [his] person at all except the cut on [his] hand and the cut on [his] back." Hill testified that when he asked for a jury trial, he thought he was also asking for the jury to sentence him. He acknowledged that he listened to the trial court's questions during the plea colloquy and that his plea was not coerced. The prosecutor then introduced Hill's letters and an affidavit from Hill's trial counsel, which stated, "Defendant was not facing jury sentencing; jury sentencing was never at issue, and following any guilty verdict, sentencing would have been done by the [c]ourt. Defendant was never informed otherwise." The affidavit also stated that just before the plea colloquy, Hill informed his counsel that "he did not [want] to put the victim's family through any more of this, nor did he wish to put his son through this."

- 6 -

During argument, defense counsel noted that it was "probably correct" that jeopardy had attached. Defense counsel noted that if the trial court granted Hill's motion, Hill would agree to waive any double jeopardy defense.

The trial court held that Hill "was not a credible witness" and that he "was not acting under any mistake of fact or misunderstanding of law when he entered his guilty plea." The trial court found that Hill was not acting in good faith and that his motion to withdraw his guilty plea was merely intended "to manipulate the criminal justice system and frustrate the ends of justice." The trial court also found that Hill's asserted defense was not substantive or reasonable because Hill was the initial aggressor and "threw the first punch." The trial court noted that he could have retreated once he gained control of the knife, but instead, he stabbed the unarmed victim to death. The trial court then noted that there was "overwhelming prejudice" to the Commonwealth, finding:

> [B]eyond the logistical problems associated with conducting a murder trial some three to four years after the date of the offense, allowing the defendant to withdraw his guilty plea at this stage of the proceedings, after the trial by jury had commenced, after the Commonwealth had rested her case-in-chief, and when legal jeopardy has surely attached, presents a double jeopardy issue which could deprive the Commonwealth of the ability to retry the case.

The trial court then denied Hill's motion to withdraw his guilty plea. Hill now appeals to this Court.

## ANALYSIS

Hill argues, "The trial court erred in denying the Appellant's motion to withdraw his guilty pleas." He argues that "because the Appellant established a good-faith basis for making the pleas and later seeking to withdraw them, he had a reasonable basis for contesting guilt, and allowing him to withdraw his pleas would not have caused significant prejudice to the Commonwealth." Hill explains that he entered his guilty plea "under an honest mistake of

material fact" because he thought the jury would decide his sentence if convicted, and he feared the jury would find him guilty of first-degree murder and impose a life sentence. He further argues that he acted in self-defense which is a "reasonable basis for contesting guilt," and he disputes any prejudice to the Commonwealth in allowing him to withdraw his plea, particularly because he waived his right to assert a double jeopardy defense.

"We review a trial court's decision to deny a defendant's motion to withdraw a guilty plea prior to sentencing under an abuse of discretion standard." *Pritchett v. Commonwealth*, 61 Va. App. 777, 785 (2013). "The decision 'rests within the sound discretion of the trial court and is to be determined by the facts and circumstances of each case.'" *Ramsey v. Commonwealth*, 65 Va. App. 593, 599 (2015) (quoting *Parris v. Commonwealth*, 189 Va. 321, 324 (1949)). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Id.* (quoting *Williams v. Commonwealth*, 59 Va. App. 238, 246-47 (2011)). "[W]hen a decision is discretionary . . . 'the court has a range of choice, and . . . its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law.'" *Id.* (alterations in original) (quoting *Landrum v. Chippenham & Johnston-Willis Hosps., Inc.*, 282 Va. 346, 352 (2011)).

Code § 19.2-296 provides:

> A motion to withdraw a plea of guilty or nolo contendere may be made only before sentence is imposed or imposition of a sentence is suspended; but to correct manifest injustice, the court within twenty-one days after entry of a final order may set aside the judgment of conviction and permit the defendant to withdraw his plea.

"As in other cases of discretionary power, no general rule can be laid down as to when a defendant will be permitted to withdraw his [guilty] plea. The decision in each case must depend to a great extent on the particular attendant circumstances." *Zigta v. Commonwealth*, 38 Va. App. 149, 153 (2002) (quoting *Parris*, 189 Va. at 325).

In *Ramsey*, this Court explained that

> withdrawal of a guilty plea should be allowed "if it appears from
> the surrounding circumstances that the plea of guilty was
> submitted in good faith under an honest mistake of material fact or
> facts, or if it was induced by fraud, coercion or undue influence
> and would not otherwise have been made."

65 Va. App. at 600 (quoting *Parris*, 189 Va. at 324). The motion must also be "'sustained by

proofs' justifying a trial on the merits." *Cobbins v. Commonwealth*, 53 Va. App. 28, 34 (2008)

(quoting *Justus v. Commonwealth*, 274 Va. 143, 153-54 (2007)). Under the *Parris* standard, the

defendant is required "(i) to establish a good-faith basis for making the guilty plea and later

seeking to withdraw it, and (ii) to proffer evidence of a reasonable basis for contesting guilt." *Id.*

"The first requirement protects the integrity of the judicial process by precluding defendants

from using a guilty plea as a subterfuge to manipulate the court. The second requirement defeats

motions to withdraw which would result in an essentially futile trial." *Id.* This Court has also

held that the circuit court "should consider whether withdrawal of a guilty plea will result in

prejudice to the Commonwealth." *Ramsey*, 65 Va. App. at 600.

The evidence at trial indicated that Hill and Holland each had concerns about the other's

relationship with Norcross and that Hill owed Holland money. By his own admission, Hill went

to Holland's apartment in the middle of the night to "clear the air." While there, the two men

argued and Hill grabbed his knife from his pocket. During the exchange, Hill admitted to

stabbing Holland repeatedly with the knife before leaving the apartment in disarray, while

covered in Holland's blood. Holland's injuries were extensive and proved fatal. When Hill

entered his guilty plea, he conceded that the evidence was sufficient to prove he murdered

Holland, and he testified at the hearing on his motion to withdraw his guilty plea that he only

pleaded guilty after hearing the evidence and seeing "all the gore" at trial. Hill told the trial

court that he had discussed the nature of the charges, the elements of each offense, and the

ranges of punishment facing him with his attorney, and he affirmed that he fully understood the potential consequences of entering his plea. Hill then admitted that he decided for himself to plead guilty and agreed that he was waiving his trial and appellate rights. Thus, Hill confirmed in his plea colloquy that he knowingly, voluntarily, and intelligently pleaded guilty with full knowledge of the charges and the potential range of punishment confronting him.

As a result, Hill's apparent claim that his guilty plea was procured inadvisedly or mistakenly is not supported by the record, and the trial court did not abuse its discretion in finding that Hill failed to make his motion in good faith. "A trial court's finding on the issue of good faith is a finding of fact, and 'we are bound by the trial court's finding[] . . . unless [it was] "plainly wrong" or without evidence to support [it].'" *Id.* at 600-01 (alterations in original) (quoting *Branch v. Commonwealth*, 60 Va. App. 540, 548 (2012)). "A trial court is not required to discuss every nuance of the law regarding a defendant's plea in order to render a guilty plea voluntary and knowing." *Zigta*, 38 Va. App. at 154. Thus, the trial court was not plainly wrong when it found that Hill did not make his motion in good faith.

The record also does not support Hill's argument that he acted in self-defense. A reasonable defense sufficient to withdraw a guilty plea is "one based upon a proposition of law" or "one supported by credible testimony, supported by affidavit." *Williams*, 59 Va. App. at 249. Moreover, the trial court's discretion "will rarely, if ever, be exercised in aid of an attempt to rely upon a merely dilatory or formal defense." *Justus*, 274 Va. at 153 (quoting *Parris*, 189 Va. at 324-25). "[T]he reasonable defense requirement 'defeats motions to withdraw which would result in an essentially futile trial.'" *Hubbard v. Commonwealth*, 60 Va. App. 200, 208 (2012) (quoting *Cobbins*, 53 Va. App. at 34). A defendant bears the burden of introducing prima facie evidence of a reasonable defense by proffering "sufficient facts to support the asserted defense." *Hernandez v. Commonwealth*, 67 Va. App. 67, 79 (2016).

"A claim of self-defense may be either justifiable or excusable; if it is either, the accused is entitled to an acquittal." *Lynn v. Commonwealth*, 27 Va. App. 336, 353 (1998). "Justifiable homicide in self-defense occurs where a person, without any fault on his part in provoking or bringing on the difficulty, kills another under reasonable apprehension of death or great bodily harm to himself." *Jones v. Commonwealth*, 71 Va. App. 70, 94 (2019). "If an accused 'is even slightly at fault' in creating the difficulty leading to the necessity to kill, 'the killing is not justifiable.'" *Id.* (quoting *Smith v. Commonwealth*, 17 Va. App. 68, 71 (1993)). "Any form of conduct by the accused from which the fact finder may reasonably infer that the accused contributed to the affray constitutes 'fault.'" *Id.* at 94-95 (quoting *Smith*, 17 Va. App. at 71).

> Excusable homicide in self-defense occurs where the accused, although in some fault in the first instance in provoking or bringing on the difficulty, when attacked *retreats as far as possible, announces his desire for peace, and kills his adversary from a reasonably apparent necessity to preserve his own life or save himself from great bodily harm*.

*Id.* at 95 (emphasis in original) (quoting *Avent v. Commonwealth*, 279 Va. 175, 200 (2010)).

Contrary to what Hill claims, the record refutes that Hill acted in self-defense. In the video of Hill's interview with the officers, which was entered into evidence at the trial, Hill explained that he went to Holland's apartment, uninvited with a knife in his pocket, in the middle of the night to "clear the air" because Holland was "talking mad trash" about him. Hill testified that he struck Holland first. The evidence presented at trial demonstrated a protracted and violent physical altercation that left Holland dead with 36 knife wounds to his body, including a cutting wound to his nose, stab wounds to his right and left cheeks, stab wounds on his right ear and anterior neck, a stab wound to the left lateral base of his neck, and stab wounds on his lateral left shoulder, his biceps, his forearms, his back, and his hands. The coffee table was shattered, a lamp was on the floor, and the apartment was in disarray. Holland's blood was smeared in various places inside the apartment and on the front entrance. Even by his own evidence, Hill

did not retreat or seek peace before stabbing Holland to death. *See Jones*, 71 Va. App. at 95 ("Because [the defendant] failed to retreat, he was not entitled to an excusable self-defense instruction."). Then, rather than calling the police, Hill removed the Ring camera to avoid detection and fled the scene. Thus, the trial court did not err in finding that Hill did not provide proof of a substantial and reasonable defense to the charges of murder and stabbing during the commission of murder, and we have no doubt that Hill's asserted defense would have proven futile at trial as Hill did not act in self-defense.

Moreover, if the trial court had allowed Hill to withdraw his guilty plea, the Commonwealth would have suffered prejudice. The murder took place in June 2022, and Hill's jury trial commenced on April 29, 2024. The Commonwealth called 16 witnesses in its case-in-chief, all of whom would have had to have appeared again to testify. A new panel of jurors would also have had to have been chosen, resulting in further delays and significant expenditure of the Commonwealth's resources. Hill moved to enter his guilty plea after the Commonwealth rested its case, which would have given him an unfair advantage during a retrial and, as the trial court noted, jeopardy had already attached. *See Peterson v. Commonwealth*, 5 Va. App. 389, 395 (1987) ("In a jury trial, jeopardy attaches when the jury is empaneled and sworn."). Thus, to allow Hill to withdraw his guilty plea would have resulted in impermissible prejudice to the interests of the Commonwealth and its ability to retry the case.

In short, the trial court correctly held that Hill's motion to withdraw his guilty plea was not made in good faith, correctly held that Hill did not provide an appropriate proffer or testimony supporting a reasonable defense to the charges, and correctly held that allowing Hill to withdraw his guilty plea would result in unfair prejudice to the Commonwealth. Therefore, the trial court did not abuse its discretion by denying Hill's motion to withdraw his guilty plea.

## CONCLUSION

For all of the foregoing reasons, we affirm the judgment of the circuit court.

*Affirmed.*